**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RAH-MEIR BUSH,
    *Plaintiff*,

    v.

LEONE, et al.,
    *Defendants.*

No. 3:25-cv-02054 (VAB)

**INITIAL REVIEW ORDER**

Rha-Meir Bush,[1] a sentenced inmate housed at Osborn Correctional Institution

("Osborn"),[2] has filed a *pro se* Complaint under 42 U.S.C. § 1983.  *See* Compl., ECF No. 1

("Compl.").  He sues eight Defendants for civil rights violations that he alleges occurred while

he was housed at MacDougall-Walker Correctional Institution ("MacDougall").  *Id.* ¶¶ 3-11.

Mr. Bush names as Defendants (1) Correctional Officer Kassoy; (2) Lieutenant Leone;

(3) Correctional Officer McCarthy; (4) Correctional Officer Marquis; (5) Director of Security

Santiago; (6) Captain Papoosha; (7) District Administrator Nick Rodriguez; and (8) Warden

Guadarrama.  *Id*. ¶¶ 4-11.  He identifies all Defendants as employees of MacDougall, and he

sues them in both their individual and official capacities.  *Id*.

Mr. Bush alleges claims under the First, Eighth, and Fourteenth Amendments.  *Id*. at 1.

---

[1] Mr. Bush spells his name differently in the Complaint than it appears on the docket.  The Department of Correction website is consistent with Mr. Bush's spelling in the Complaint.  The Court therefore kindly directs the Clerk of Court to correct the spelling of Mr. Bush's name on the docket, and the Court uses the spelling as it appears in the Complaint.

[2] *See* DOC, Inmate Locator, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=397623 (last accessed Feb. 5, 2026).  Mr. Bush was sentenced on March 7, 2025.  *Id*.

For the following reasons, the Fourteenth Amendment due process claims against Defendants Leone, Rodriguez, Santiago, and Papoosha in their individual and official capacities will proceed.

The First Amendment, Eighth Amendment, or Fourteenth Amendment Equal Protection claims, and all claims against Defendants Kassoy, McCarthy, Marquis, and Guadarrama in their individual or official capacities are **DISMISSED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On May 23, 2025, correctional staff allegedly removed Mr. Bush from his cell in MacDougall general population housing, and moved him to the Restrictive Housing Unit ("RHU"), pending what he refers to as a disciplinary hearing.  Compl. ¶ 15.  Mr. Bush alleges that he was strip searched and told he was being placed in RHU pending a security risk group ("SRG") affiliation determination.  *Id*. ¶ 16.  Mr. Bush alleges that he was held in an RHU cell for the next two weeks, without a "change of clothes, proper [hygiene], and . . . reading and/or writing material to prepare his defense."  *Id*. ¶ 18.

Mr. Bush alleges that on May 27, 2025, he "was told that he cannot plead guilty or innocent to the [disciplinary] report for the SRG [a]ffiliation [and] that he must go to a hearing at a later date."  *Id*. ¶ 17.  Around May 29, 2025, he alleges that he "briefly spoke" to his advisor, but he "did not get an [opportunity] to review or go over the evidence being used against him at his hearing."  *Id*. ¶ 19.

Mr. Bush alleges that he attended his hearing on June 6, 2025, and Lieutenant Leone, Correctional Officer Kassoy, and Correctional Officer McCarthy were in attendance.  *Id*. ¶ 20. There, Mr. Bush alleges he learned that his SRG affiliation was based on "common identifiers"

and "known high ranking gang members." *Id.* ¶ 21. Mr. Bush alleges that he informed the officials that he was not an "active" gang member. *Id.* ¶ 22.

After it was apparently suggested that some of Mr. Bush's phone calls indicated that he was affiliated with a gang, Mr. Bush alleges that he informed the officials that his calls were to his friend of twenty years, and that no gang politics were discussed on those calls. *Id.* ¶¶ 22-23. Mr. Bush alleges that "checking on the [wellbeing] of a love[d] one cannot be reasonably associated or construed as any SRG conversation." *Id.* ¶ 23.

Mr. Bush alleges that Lieutenant Leone informed Mr. Bush that "he [did not] feel there was anything in the incident report to affiliate him[,] but the investigation came from [the] central office and just being in contact with a known gang member is enough to be guilty of affiliation." *Id.* ¶ 24. Mr. Bush alleges that Lieutenant Leone then adjudged him guilty. *Id.*

Mr. Bush alleges that he has no gang affiliations either in or out of his DOC confinement. *Id.* ¶ 26. As relief, Mr. Bush seeks damages and injunctive relief, including placement in general population. *Id.* ¶¶ 56-60.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents

3

and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.    DISCUSSION

### A.  The Personal Involvement Requirement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citation and quotation marks omitted).  This is true with respect to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Mr. Bush has pleaded no facts to support the personal involvement of Correctional Officers Kassoy, McCarthy, and Marquis, or Warden Guadarrama.  Mr. Bush does not allege that these Defendants had specific knowledge of or involvement in the alleged constitutional violations.  He instead alleges that, by virtue of their supervisory positions or mere presence, they should be accountable for the violations he alleges occurred.

But because he must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability," *Tangreti*, 983 F.3d at 620, these allegations are not sufficient to allow this claim to proceed.

Accordingly, the claims against Correctional Officers Kassoy, McCarthy, and Marquis, and Warden Guadarrama in their individual capacities will be dismissed.

### B.  The Fourteenth Amendment Due Process Claim

5

A claim of violation of procedural due process raises whether (1) there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*) ("As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974). The *Wolff* standard requires "some evidence" to support the decisions to place an inmate in administrative or punitive segregation. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (procedural due process requires that decision in connection with prison disciplinary hearing be "supported by some evidence in the record").

6

Both the *Wolff* and *Hewitt* standards require "some evidence" to support the decisions to place an inmate in administrative or punitive segregation. *Brown v. Semple*, No. 3:16CV376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. at 454 (procedural due process requires that decision in connection with prison disciplinary hearing be "supported by some evidence in the record")).

### i. RHU Placement

Mr. Bush alleges that on May 23, 2025, he was moved to RHU pending an SRG affiliation determination. Compl. ¶¶ 15-16. He alleges he was held there for two weeks, without a "change of clothes, proper [hygiene], and . . . reading and/or writing material to prepare his defense." *Id.* ¶ 18. He further alleges he was told on May 27, 2025, "that he cannot plead guilty or innocent to the [disciplinary] report for the SRG [a]ffiliation [and] that he must go to a hearing at a later date." *Id.* ¶ 17. He adds that around May 29, 2025, he "briefly spoke" to his advisor, but he "did not get an [opportunity] to review or go over the evidence being used against him at his hearing." *Id.* ¶ 19.

These allegations suggest that Mr. Bush was deprived of his procedural due process rights for his administrative segregation while his SRG affiliation determination was pending. *See Soto v. Walker*, 44 F.3d 169, 172 (2d Cir. 1995) ("The failure to provide informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement states a due process claim."). Although it is not clear who acted to place him in RHU without proper notice of the charges and an opportunity to present his views, for purposes of this review, this claim may proceed against Captain Papoosha, who was the SRG Coordinator plausibly involved with decisions concerning Plaintiff's SRG affiliation.

7

Accordingly, this claim will proceed against Captain Papoosha in his individual and official capacity.

### ii.     SRG Designation Hearing

Mr. Bush had his hearing on June 6, 2025.  Compl. ¶ 20. He alleges generally that he was adjudged guilty of SRG affiliation at his hearing based on erroneous evidence, despite the fact that Defendant Leone did not "feel there was anything in the incident report to affiliate him[,] but the investigation came from [the] central office and just being in contact with a known gang member is enough to be guilty of affiliation."  *Id*. ¶ 24.  Mr. Bush's allegations suggest that the central office predetermined his guilt.

At this early stage, these allegations are sufficient to support an inference that he was deprived of a meaningful opportunity to be heard at his hearing as required under *Wolff*, 418 U.S. at 561-70.  In addition, Mr. Bush suggests that the guilty determination was not supported by reliable evidence as required under *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020).

Accordingly, Mr. Bush's procedural due process claim against Lieutenant Leone, District Administrator Rodriguez, Director of Security Santiago, and Captain Papoosha, all of whom were plausibly involved in the deprivation of Plaintiff's procedural due process rights in connection with his SRG hearing, will proceed.

Moreover, a plaintiff may proceed for injunctive or declaratory relief against defendants in their official capacities only if the plaintiff alleges an ongoing constitutional violation. *See Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  Mr. Bush requests ongoing injunctive relief inasmuch as he requests an order returning him to general population.  This ongoing relief plausibly relates to the conduct of each of these Defendants.

Accordingly, Mr. Bush may proceed against Lieutenant Leone, District Administrator Rodriguez, Director of Security Santiago, and Captain Papoosha in their official capacities, but all other official capacity claims against any other Defendants will be dismissed.

### C.  The Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment, which forbids cruel and unusual punishment, has been interpreted to prohibit conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The ban on cruel and unusual punishment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).

A successful claim for deliberate indifference must satisfy both objective and subjective components of the test. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom., *Foote v. Hathaway*, 513 U.S. 1154 (1995).  With respect to a conditions of confinement claim, objectively an inmate must be deprived of a "basic human need," or be subjected to a "substantial risk of serious harm" to health or safety. *Rhodes*, 452 U.S. at 347; *Farmer*, 511 U.S. at 834.  Conditions are objectively serious enough to implicate the Eighth Amendment where, alone or in combination, they produce "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Under the subjective requirement, a defendant must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 836-37).  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.*

The Court assumes, for initial review purposes, that Mr. Bush's allegations that he was held in an RHU cell for two weeks without a "change of clothes, proper [hygiene], and . . . reading and/or writing material to prepare his defense," Compl. ¶ 18, are sufficiently serious so as to satisfy the objective standard.

Mr. Bush has not, however, pleaded facts to suggest that any Defendant was "actually aware" of these conditions. *See Salahuddin*, 467 F.3d at 280. Therefore, Mr. Bush's allegations fail to satisfy the subjective standard.

Accordingly, Mr. Bush's Eighth Amendment deliberate indifference claim will be dismissed without prejudice.

### D. The First Amendment Claim

The First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (same). And "courts in this district have concluded that using an incarcerated individual's social media posts to designate him as an SRG prisoner does not violate a prisoner's First Amendment rights." *Bibiloni v. Roberts*, No. 3:25-CV-00071 (SFR), 2026 WL 73723, at *3 (D. Conn. Jan. 9, 2026) (citing cases).

While Mr. Bush alleges that the Defendants violated his First Amendment right in thwarting his freedom of speech because Defendants "punish[ed] him" based on a phone call with a friend, use of social media, and an album cover, Compl. ¶¶ 27-28, 38-41, 50-54, he fails to plausibly plead facts to support a First Amendment violation.

Accordingly, Mr. Bush's First Amendment claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

10

### E.  The Fourteenth Amendment Equal Protection Claim

To plead a plausible equal protection claim, a plaintiff must plead facts showing that: (1) he has been treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Absent a suspect classification, a plaintiff may proceed under a "class of one" theory by "alleg[ing] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  For this theory, a plaintiff must demonstrate the existence of a person who is "*prima facie* identical" to him and who was treated differently.  *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019).  In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

Here, Mr. Bush has not pleaded facts to support membership in a suspect class because prisoners in general are not a suspect class.  *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012).  Mr. Bush must proceed, if at all, as a "class of one."  But Mr. Bush's Complaint does not

11

contain allegations to suggest that he is being treated differently from a comparator so similar as to suggest that Mr. Bush was subject to disparate treatment absent a rational basis. Compl. ¶¶ 29-34.

Accordingly, because Mr. Bush has not pleaded facts to support a plausible equal protection claim, this claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## IV.    CONCLUSION

For the reasons stated above, the Fourteenth Amendment due process claims against Defendants Leone, Rodriguez, Santiago, and Papoosha in their individual and official capacities will proceed.

His First Amendment, Eighth Amendment, or Fourteenth Amendment Equal Protection claims, and all claims against Defendants Kassoy, McCarthy, Marquis, and Guadarrama in their individual or official capacities are **DISMISSED**.

## ORDERS

The Court enters the following orders:

(1)     The case shall proceed on Mr. Bush's Fourteenth Amendment due process claims against Defendants Leone, Rodriguez, Santiago, and Papoosha in their individual and official capacities. Mr. Bush's First Amendment, Eighth Amendment, and Fourteenth Amendment Equal Protection claims are dismissed. The Clerk of Court is kindly directed to terminate Defendants Kassoy, McCarthy, Marquis, and Guadarrama in their individual and official capacities.

If Mr. Bush believes in good faith that he can correct the deficiencies of his claims as identified in this Order, Mr. Bush may file a motion to amend with an attached proposed

Amended Complaint.  He is advised that any Amended Complaint will completely replace the prior Complaint, and that no portion of any prior Complaint shall be incorporated into his Amended Complaint simply by reference.  Any Amended Complaint must be filed by **June 19, 2026**.

(2) The Clerk of Court shall verify the current work addresses for Lieutenant Leone, District Administrator Rodriguez, Director of Security Santiago, and Captain Papoosha with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and attachments to them at their confirmed addresses by **May 29, 2026**, and report on the status of the waiver request by **June 12, 2026**.  If Defendants fail to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendants, and the Defendants shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Defendants Leone, Rodriguez, Santiago, and Papoosha in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by **June 12, 2026**, and to file a return of service by **June 26, 2026**.

(4) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) The Defendants shall file a response to the Complaint, either an Answer or motion to dismiss, by **September 4, 2026**.  If the Defendants choose to file an Answer, the Defendants

13

shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **December 18, 2026**.  Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by January 29, 2027.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Bush changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  He must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

**SO ORDERED** at New Haven, Connecticut, this **8th day of May, 2026**.


/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

14